129 N.J. Super. 41 (1974)
322 A.2d 192
UNION MINERALS AND ALLOYS CORP., PLAINTIFF,
v.
PORT REALTY & WAREHOUSING CORP., ET AL, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 3, 1974.
*42 Messrs. Cole, Berman & Belsky, attorneys for plaintiff (Mr. Morrill J. Cole appearing).
*43 Messrs. Kirsten, Solomon, Friedman & Cherin, attorneys for defendants (Mr. Harold Friedman appearing).
KIMMELMAN, J.S.C.
The compelling facts in this case call for the intervention of the strong arm of equity in order to forestall a breach of a lease covenant requiring possession of the demised premises to be surrendered and delivered up on or before September 30, 1974.
It is undisputed that plaintiff is the landlord under an agreement of lease with defendant Port Realty & Warehousing Corp. as tenant, covering a huge industrial building located in Kearny, New Jersey, on property formerly known as the U.S. Naval Industrial Reserve Shipyard. The demised term was for a period of ten years commencing October 1, 1964 and ending September 30, 1974. Photographs presented to the court show that all available space on the demised premises has been utilized for the storage of vast quantities of machinery and equipment of such immense size and weight as to dwarf workmen standing nearby.
With September 30, 1974 approaching, plaintiff is fearful that unless defendant undertakes appropriate action at this time, the enormity and complexity of the task facing it to remove the machinery and equipment will necessarily consume a period of time which will extend beyond the expiration date of the lease. Plaintiff has formulated plans to construct a steel mill on the demised premises for the production of steel reinforcing bars for the construction industry. That product is said to be in short supply and the subject of great demand. Plaintiff's plans for the steel mill have progressed beyond the mere drawing board stage, and hence its concern in securing prompt possession of its premises upon termination of the lease.
It is claimed by plaintiff that an officer of defendant stated in December 1973 that it would take almost a year beyond the September 30, 1974 termination date for defendant to remove its property. On the other hand, in response to the *44 application of plaintiff for preliminary injunctive relief, defendant's principal states:
We have been actively looking for almost a year for a suitable new location. We expect to have one in sufficient time to effectuate a move which would avoid holding over. The immediate problem that exists is not so much the time to move but the place, expense, and liquidation of inventories.

* * * * * * * *
It goes without saying that the timing of any move depends on what inventory is to be scrapped, what is to be moved to customers, and what is to be relocated in inventory at a new location. But our plans must be integrated. By reason of our accelerated efforts to sell off machinery, we hope to minimize a move to storage. We reiterate that we intend and believe that we can and will in orderly fashion be able to surrender the premises at the expiration of our lease. But we also stress that a precipitous move will destroy our ability to market the machinery and orderly wind up our affairs at this location.
Faced with plaintiff's expert's assertion that it would take at least 150 working days to remove the machinery and equipment from the demised premises, which assertion was countered by defendants' claim that it has every intention of complying with the September 30, 1974 deadline and its argument that an anticipatory breach of the lease should not be assumed, this court ordered that both parties retain the Brennan Company of Kearny, New Jersey, a reliable and independent rigger, for the purpose of advising the court as to the commencement date of the move. Brennan now advises that the machinery and equipment can be removed (assuming the new location is within a radius of 10 to 15 miles) within 12 weeks, based upon five 8-hour working days a week, or within 10 weeks, based upon five 12-hour working days a week. The work should begin not later than July 1, 1974 regardless of which alternative is used, and the planning for the work must be done not later than mid-June.
It is axiomatic that a landlord is entitled to possession of his leased property promptly upon the expiration of the term of the demise. A tenant who fails to quit the premises at the expiration of the term is considered a wrongdoer *45 subject to an action for ejectment and for damages by the landlord. Beach Realty Co. v. Wildwood, 105 N.J.L. 317 (E. & A. 1929); Decker v. Adams, 12 N.J.L. 99 (Sup. Ct. 1830). As part of its use and enjoyment of leased premises every tenant must take timely steps to wind down or tail off its operations so that it will be able to meet the lease deadline. Although the end of the demised term has not yet arrived, the unusual factual circumstances here presented when coupled with the inexorable passage of time compels the court to the conclusion that the breach of the lease clause requiring surrender of possession by September 30, 1974 is most imminent if not already preordained. Unless the defendant takes appropriate action now "with all deliberate speed" it will be physically impossible for the defendant not to breach.
Obviously, where a party so governs his conduct as to voluntarily place out of his control the power to perform a contract even though the time for performance has not yet arrived, he is guilty of an anticipatory breach of that undertaking and may be held accountable at both law and equity. Internal Water Heater v. Burns Brothers, 114 N.J.L. 368, 373 (E. & A. 1934); Miller & Sons Bakery Co. v. Selikowitz, 8 N.J. Super. 118 (App. Div. 1950); Roth Systems v. Linden Dari-Delite, Inc., 35 N.J. 329, 341 (1961); 49 Am. Jur.2d, Landlord and Tenant, § 178 at 202-203; cf. Dover Shopping Center v. Cushman's Sons, Inc., 63 N.J. Super. 384 (App. Div. 1960).
Research has not disclosed any reported decision dealing with a court's power to force a tenant to commence preparations to remove himself at the expiration of a demised term. However, where the facts are compelling, as in the instant matter, mere lack of precedent should not stand as a bar to equitable relief. Fortugno v. Hudson Manure Co., 51 N.J. Super. 482, 501 (App. Div. 1958).
Under all of the circumstances, plaintiff's complaint is neither fancied nor imagined. Defendant's appropriation of plaintiff's property beyond the September 30, 1974 deadline *46 looms larger each day rendering the anticipated or threatened injury very real indeed. Consequently, equitable intervention is required. Hoffmann La-Roche, Inc. v. Weissbard, 11 N.J. 541, 551 (1953).
At this stage of the proceedings the court will entertain an order reciting the following form of relief:
1. Plaintiff has the right to secure possession of the demised premises on September 30, 1974.
2. Defendant shall forthwith make arrangements to secure suitable space capable of accommodating the machinery and equipment which is to be removed from plaintiff's premises.
3. Defendants shall forthwith make arrangements to dispose of, by way of sale, lease or otherwise, any such machinery and equipment it does not desire to remove to a new location.
4. Defendant shall forthwith make necessary arrangements with a rigging company or other mover to commence removal of the machinery and equipment not later than July 1, 1974.
5. Defendant shall report to this court not later than June 14, 1974 all arrangements made to implement the foregoing.
6. The mandatory provisions of the order shall be subject to amendment or modification upon two days' notice.
The foregoing shall not be deemed a final disposition of this matter but shall be considered as providing for a preliminary mode of relief, the efficacy of which shall be tested in the light of subsequent events. Cf. Dover Shopping Center v. Cushman's Sons, Inc., supra. The question of damages, if any, is expressly reserved.