TOWNSHIP OF TEANECK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. LOCAL #42, FIREMEN'S MUTUAL BENEVOLENT ASSOCIATION AFFILIATED WITH TEAMSTERS LOCAL 286 AND ALL INDIVIDUAL MEMBERS THEREOF, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 31, 1977—Decided March 10, 1978.

Before Judges FRITZ, BOTTER and ARD.

*Mr. David A. Wallace* argued the cause for appellant (*Mr. Gerald L. Dorf,* attorney).

*Mr. Howard A. Goldberger* argued the cause for respondents (*Messrs. Goldberger, Siegel & Finn,* attorneys).

·The opinion of the court was delivered by

FRITZ, P. J. A. D. The appeal in this matter embraces two questions involving the obligation and the prerogative of the Chancery Division in labor disputes. The first of these tests whether the Chancery Division may condition an injunction against an illegal strike by imposing requirements with respect to further negotiations. The second seeks an answer as to whether the Chancery Division may in any event impose certain conditions in a labor dispute where jurisdic-

tion appears by virtue of an action for injunction against an illegal work stoppage. We answer the first of these inquiries in the negative and the second by qualified affirmation.

At the outset we note argument of the parties addressed to an additional question relating to a purported mootness of the appeal. This arises by virtue of an order of the Appellate Division interposed between the judgment of the Chancery Division from a portion of which the appeal has been taken and the argument of the appeal. We need not decide this question because we are satisfied that resolution of the basic issues is in the public interest irrespective of whether the situation before us is in fact moot. *Busik v. Levine,* 63 *N. J.* 351, 363–364 (1973), app. dism. 414 *U. S.* 1106, 94 *S. Ct.* 831, 38 *L. Ed.* 2d 733 (1973).

While the defendant Local #: 42 (Local), respondent here, complains (not without some justification) of the inclusion by plaintiff appellant Township of Teaneck (township) in the statement of facts in its brief of many alleged facts which do not at all appear in the record below (see *R.* 2:5–4 and 5)[1], the facts necessary to the determination of the questions detailed above seem not to be the subject of any serious dispute. It would appear that very shortly after reference of a labor dispute between township and Local to a factfinder appointed by the Public Employment Relations Commission (PERC), 15 firefighters of 18 scheduled to report for duty failed to report. The trial judge evidently accepted the representation of counsel for Local that this conduct "was a response on their part because of the frustrations they have experienced in negotiations with the Township concerning a contract." The township sought and obtained from the Chancery Division an order to show cause why this

---

[1] It would be unfair not to observe at the same time that the Local chose not to file any pleadings or affidavits below, and the comments of the trial judge in his determination are accompanied by such statements as "I am informed by the defendants' counsel," and "[c]ounsel for the defendants has related [etc.]."

work stoppage, characterized by township in its brief as an "illegal 'sick out,'" should not be enjoined. A temporary restraining order matured into an interlocutory injunction on the return date.[2] But the trial judge, in an oral determination, added:

> * * * I am going to direct as a condition of the entry of this order that the parties, through their designated representatives, meet with the fact finder on or before ᴵᵂ * * July 12th, and that the parties continue to meet with the fact finder at least twice each week until the fact finder has completed his report, and I am going to direct that it be completed and filed on or before July 22nd.
>
> I will further direct that the parties meet in negotiations face-to-face through their designated representatives, outside of any fact finder, at least twice each week for a minimum period of three hours or until they have reached an agreement. In the event that the Township fails or refuses to abide by the terms of this order, on application of the defendants the injunction will be vacated.

The township, offended by the conditions, sought leave to appeal and a stay from us. Leave was granted and the preliminary injunction was continued. But a wholesale stay was denied. Instead, we modified the conditions imposed and included in the modification the requirement that "the parties through their designated representatives shall also attend and participate in negotiations sessions with the fact finder appointed by the Public Employment Relations Commission

---

[2]The record leaves many questions and much to be desired with respect to the actual return date which questions the briefs of the parties leave unexplained. The order to show cause is dated July 5, 1977, requires answering affidavits and briefs, if any, by July 7, 1977, and sets July 8, 1977 as the return date. The transcript purporting to be of the proceedings on the return day is dated July 5, 1977. The parties appear to agree in their briefs that the return of the order was heard on July 7, 1977. This is consistent with the representation in the motion for leave to appeal which is dated July 8, 1977 and which, it is agreed in the respective briefs, was filed in the Appellate Division on July 8, 1977. We include our observation not because the uncertainty has any significance (which it does not) but because we do not want to leave the record in the shaggy condition in which the parties left it with us.

as scheduled until the said fact finder's report is completed and filed." We did stay "any provision of the oral order of the Chancery Division * * * inconsistent with" the modifications of our order.

On its appeal the township urges that an injunction against the concerted withholding of services by public employees must be issued unconditionally in the public interest. Further, it insists that primary jurisdiction in labor disputes of this nature has been invested in PERC and that "the trial divisions of the Superior Court lack concurrent jurisdiction over any procedural or substantive issues involved in the public sector collective negotiations process governed by the New Jersey Employer-Employee Relations Act."

Nobody doubts the authority of the Chancery Division to enjoin the "concerted withholding of services by public employees." Indeed, Local, while denying any concession that its employees were engaged in concerted activity (but agreeing at the same time that 15 of 18 of those employees called in sick on the day in question), points out to us in its brief that it did not appeal from the order enjoining such activity. The law in our State has long prohibited public employees from striking. *Union Beach Bd. of Ed. v. N. J. E. A.*, 53 *N. J.* 29, 36 (1968). It is also clear that the Chancery Division may enjoin this illegality and impose sanctions for disobedience to its orders. *In re Buehrer*, 50 *N. J.* 501 (1967).

The question before us in this respect is whether the Chancery Division, on proper application in circumstances demonstrating a strike in the public sector, must enjoin the activity. Put another way more appropriate to the context of the precise problem presented here, the question becomes: May the Chancery Division condition its grant of an injunction against illegal activity or refuse to enjoin the activity in the event conditions it imposes are not satisfied? As indicated above, we think not.

Disruption of government is so serious a problem — called in *Union Beach, supra,* a "subject * * * so vital" (53 *N. J.*

at 46) — that its prohibition is more than a prerogative of the Chancery Division; it is an obligation. "[A]ny concerted action which obstructs or disables government runs strongly against sound public policy." *Union Beach, supra, ibid.* See also, *In re Block,* 50 *N. J.* 494 at 499 (1967), where it is pointed out, "When government undertakes itself to meet a need, it necessarily decides the public interest requires the service, and its employees cannot reverse or frustrate that decision by a concerted refusal to meet that need."

Accordingly, we believe that in the absence of the most compelling circumstances wholly excusing the grant of an injunction,[3] it is incumbent upon the trial court to prohibit unqualifiedly the illegal activity. For a trial court to do less would be for it to condone illegality and to trade one right for two wrongs. This we cannot approve.

On the other hand, we are equally convinced that while the injunction may not be conditioned, the Chancery Division ordinarily has the power in its equitable jurisdiction to fashion a complete remedy. As was pungently put by Judge Jayne, himself a highly regarded erstwhile vice-chancellor, in *Grieco v. Grieco,* 38 *N. J. Super.* 593 (App. Div. 1956) :

> * * * [E]quity never permits a rigid principle of law to smother the factual realities to which it is sought to be applied. In equity you cannot tune out the relevant static and undertones, Equity adapts its relief to the requirements of the particular case, * * *.
> [at 598]

A prime purpose of equity is the settlement of the rights of the parties *inter se* according to the dictates of equity and justice. *Jones v. Gabrielan,* 52 *N. J. Super.* 563, 573 (App. Div. 1958). This being so, we believe that while the injunction below could not be made contingent upon the fulfillment of certain conditions, jurisdiction also appears whereby

---

[3] See, for instance, *N. J. S. A.* 2A:15–54.

the Chancery Court might, if in the circumstances of the case cautious concern for equity and justice so require, issue a mandatory injunction requiring the doing of certain affirmative acts. *Bailey v. Schnitzius,* 45 *N. J. Eq.* 178 (E. & A. 1888). While, for reasons set forth above, vacation of the injunction against the work stoppage was not available as a sanction, we perceive no reason why traditional sanctions, including contempt, could not and should not be imposed in case of a wilful violation of such a mandatory injunction. See *N. J. Dept. of Health v. Roselle,* 34 *N. J.* 331 (1961).

We thus decide that the purpose of the judgment below was proper but the manner of its entry, involving a contingency imposed on the injunction against the work stoppage, was not.

This does not conclude our task. As noted above, the township also urges that since PERC has primary jurisdiction in this matter, the Chancery Division lacked concurrent jurisdiction to act, except, of course, to issue, at the township's behest, the injunction against the work stoppage. Respondents contend that since there was no unfair labor practice proceeding pending before PERC, Chancery had jurisdiction "during the hiatus period between the time when its jurisdiction is invoked and the time when [PERC] can assume appropriate and effective jurisdiction."

We have dealt with the problem before. We have noted PERCs primary jurisdiction in scope problems. *Plainfield Bd. of Ed. v. Plainfield Ed. Ass'n,* 144 *N. J. Super.* 521 (App. Div. 1976), *see Asbury Park Bd. of Ed. v. Asbury Park Ed. Ass'n,* 155 *N. J. Super.* 76 (App. Div. 1977). We have also dealt with the jurisdiction of Chancery to direct both parties to negotiate during the pending of an order enjoining a strike. *In re Hoboken Teachers' Ass'n,* 147 *N. J. Super.* 240 (App. Div. 1977). There we held that, in view of the "exclusive power" invested in PERC by *N. J. S. A.* 34:13A–5.4(c) with respect to the prevention

of all unfair practices as they are defined in *N. J. S. A.* 34: 13A–5.4(a) and (b), that which we said with respect to PERC's primary jurisdiction in the scope cases was also applicable in the unfair practice cases.

But challenges in terms of jurisdiction promote semantic obfuscation. Indeed, with respect to jurisdiction, legislation purporting to deprive the Chancery Division of jurisdiction might well be unconstitutional, at least to the extent it prevented Chancery from granting "legal and equitable relief * * * so that all matters in controversy between the parties may be completely determined." *N. J. Const.* (1947), Art. VI, § III, par. 4. On the other hand, we were careful to note in *In re Hoboken Teachers' Ass'n, supra,* and iterate here, that the matter is not so much one of jurisdiction as it is one of comity between the courts and administrative agencies charged with particular regulatory duties. Customarily, if not always, these considerations require the suspension of the judicial process in deference to the special competence of the administrative agency. While we are loath in any case categorically to deny the possibility of exceptional circumstances, we observe that defensible reasons for Chancery to preempt the primary jurisdiction of PERC in the case of charges of unfair practices contrary to the statute would need to be exceptionally compelling to pass muster. Other language also authored by Judge Jayne, although in a different context, might well be borrowed here:

* * * The power of this court to award such relief is indubitable, but it is exercised only in extreme cases where the basic right of the party requesting such extraordinary assistance is very clear, and where considerations of the relative inconveniences bear strongly in favor of the applicant. * * * [*Moss Industries, Inc., v. Irving Metals Co., Inc.,* 140 *N. J. Eq.* 484, 485 (Ch. 1947)]

We need not in this case establish more definite perimeters than these. For the fact of the matter is that on the return date below the proceedings were wholly summary

and no record related findings appear.[4] In such circumstances we cannot conclude that Chancery was correct in its rejection of the primary jurisdiction of PERC and its preemption of the remedial process.

We affirm the injunction against the concerted work stoppage and without conditions. We reverse with respect to the imposition of conditions and vacate the conditions we imposed in the stead of those imposed by the trial judge. We remand to PERC for such further proceedings as are necessary. We do not retain jurisdiction.

---

[4]We recognize and have already noted the comments by the trial judge which might, if properly bottomed in the record, be received as findings. Their stated source, *i. e.*, nonrecord statements of and information from counsel for defendants, frustrates their usefulness. They do not even rise to the plane of affidavits on the motion. See n. 1 *supra*.