170 N.J. Super. 426 (1979)
406 A.2d 989
THE BOARD OF EDUCATION OF THE VOCATIONAL SCHOOL IN THE COUNTY OF SUSSEX, PLAINTIFF,
v.
SUSSEX COUNTY VOCATIONAL-TECHNICAL TEACHERS EDUCATION ASSOCIATION, INC., ROBERT D. WALKER, ITS PRESIDENT, THOMAS L. MARCHESELLO, ITS VICE-PRESIDENT, WILLIAM LEACH, LINDA DE LORENZO, CARL DOHM, AND WILLIAM FLYNN, AND ALL OFFICERS, MEMBERS AND AGENTS OF THE SUSSEX COUNTY VOCATIONAL-TECHNICAL TEACHERS EDUCATION ASSOCIATION, INC., AS A CLASS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided September 26, 1979.
*428 Mr. Emanuel A. Honig for plaintiff (Messrs. Honig and Honig, attorneys).
Mr. Gerald Goldberg for defendant Teachers Education Association (Messrs. Goldberg and Simon, attorneys).
STANTON, J.S.C.
Plaintiff board is an educational public entity organized under Title 18A of the New Jersey Statutes. It conducts a secondary level public vocational school (hereinafter the School) for students residing in Sussex County. The Board and defendants are in the middle of teacher contract negotiations. The negotiations are not going well. Most of the teachers employed by the Board are presently on strike. A number of these teachers have been picketing the School on a daily basis since September 20, 1979.
The teachers employed by the Board are public employees. N.J.Const. (1947), Art. I, par. 19, gives public employees the right to organize and to negotiate on a group basis through representatives of their choosing. However, public employees in New Jersey never had and do not now have the right to strike. Union Beach Bd. of Ed. v. N.J. Education Ass'n, 53 N.J. 29 *429 (1968). A verified complaint filed with me by the Board on September 19 established that an unlawful teachers' strike was in progress. In accordance with obligations imposed upon me by law, on September 20 I signed an order to show cause, returnable on October 3, which contained temporary restraints forbidding defendants to engage in a strike against the Board or to establish picket lines at the School. See, generally, Teaneck Tp. v. Local 42, 158 N.J. Super. 131 (App.Div. 1978). Thereafter, reports on the radio and in the press indicated that the strike continued despite the order signed by me and that picketing was also going on at the School. On my own initiative I decided on September 24 that I would hold a hearing on September 26 to ascertain whether any of the defendants were in fact violating my order of September 20 prohibiting striking and picketing.
It is important that the parties in this case, and the public, understand why I decided on my own initiative to hold a hearing on September 26. The order I signed on September 20 was not a private document conferring a private benefit upon the Board, to be enforced or not enforced at the whim of the Board. It did confer some rights upon the Board, but much more importantly, it declared an obligation under public law so far as defendants and the teachers employed by the Board are concerned. Violation of such an order is an affront, not to the individual judge who happens to have had the duty to sign the order in question, but to the constitutional, legal and moral rules under which we live. Ultimately, violation of such an order is a frontal assault upon basic concepts of ordered democratic liberty. It challenges the right of the people of this State and this nation to govern themselves in accordance with rules of public conduct established on a democratic and constitutional basis. Quite simply, and quite literally, violation of such an order is intolerable, regardless whether the Board complained about it or not. (In this case the Board did not make any complaint about violation of the September 20 order prior to my decision to hold the hearing.)
*430 Let me stress at this point that my decision in this case does not turn upon the ultimate soundness of the legal rule that public school teachers may not strike. The legal rule against strikes by public school teachers obviously is not, in itself, of the same order of human importance as the legal rules against murder, rape, arson or robbery. No civilized society (much less a highly developed constitutional democracy such as our own) could conceivably permit murder, rape, arson, robbery, or the like. Although there are strong public policy reasons against permitting any public employees, including public school teachers, to strike, and although these reasons have up until now been persuasive so far as the Supreme Court and the Legislature of this State are concerned, there are sensible arguments which can be made for permitting public school teachers to strike.
There are sensible reasons for arguing that we should distinguish between different kinds of public employees when we create rules about the right to strike. I think it is axiomatic that, in the long run, the quality of life in our society depends very much upon the quality and integrity of our public educational institutions. On the other hand, I think that, in the short run at least, there is an obvious difference between the kind of immediate danger to life, safety and health posed by something like a police strike, or a firefighters' strike, or a strike in a sewage disposal plant, and the kind of problems posed by a strike of public school teachers. After all, while we never intentionally close our police, firefighting or sewer operations for even an hour, we routinely close our public school systems every summer for two months. The fact that there is a difference between the public impact of not having the services in question might well mean that we should treat the strikes and the employees involved differently.
I, for one, can readily conceive of an ordered constitutional democracy in which public school teachers, did have the legal right to strike. Of course, even if they had the legal right to strike, it might well be that for reasons of professional integrity *431 most teachers would elect not to exercise that legal right. I myself would not be particularly surprised if the Legislature did some day grant public school teachers at least a limited right to strike.
But the fact is that, as of right now, the Supreme Court and the Legislature of this State, acting under powers constitutionally granted to them by the people, have established the legal rule that public school teachers may not strike. The Legislature has the right to change that rule whenever it concludes that the public interest so requires. Defendants and others of similar views have the right to work within the legal and constitutional systems of our State and nation to change the rule against strikes by public school teachers. There are many entirely appropriate, meaningful and commendable ways in which they may work to advance their cause. However, defendants do not have the right to break the presently established legal rule because they happen to disagree with it, or because they think that their proposed rule is a better one, or because they do not like their self-interest to be limited by contrary public legal rules.
It is a fundamental moral value of a society such as ours, it is essential to the reasonably smooth and fair functioning of our kind of constitutional democracy that each person limit his actions so that they are compatible with public legal rules. The public legal rules are not perfect, they are certainly subject to being changed, but they do, by and large, represent an honest and conscientious effort by duly constituted bodies to promote the common good. No individual, no interest group  not even one as important and as generally esteemed as is the public school teachers' group  has the right to set itself above the law. It is clear that if too many individuals or interest groups take it upon themselves to break public legal rules which they do not like, and if they are allowed to get away with it, then our whole system of ordered liberty will eventually collapse under the *432 weight of mean-spirited selfishness. After that, it is only a question of time before we are back to the law of the jungle.
I have no official responsibility for deciding the merits of any negotiating dispute between the Board and the defendants. As a matter of fact, I do not know in any detail what points are at issue between them. I do have the responsibility of seeing to it that negotiations are carried on within the framework of established legal rules. I do have the responsibility to the parties, and to the public, of preventing any party from using an unlawful tactic against any other party or against the public. I do have the responsibility as a judge of this court to enforce the order against striking and picketing which I signed on September 20.
A traditional way of enforcing court orders such as the one I signed on September 20 is to hold violators in contempt of court. Fines and jail terms can be imposed on violators. In the present case I do not think it appropriate to use the contempt powers of the court, at least not at this stage. For one think, I think that defendants and the teachers who have violated the order of September 20 have probably done so because they have not fully appreciated the implications of their actions. I hope that when they read this opinion they will realize the implications of what they are doing, that they will end the strike and the picketing, that they will go back to work and that they will continue to negotiate vigorously. Furthermore, jailing large numbers of people can become impractical and very expensive for the public treasury. I believe that it is possible effectively and fairly to achieve the objectives of the order of September 20 without jailing a single person or imposing a single fine, and I believe that this can be done at minimum cost to the public.
The following order is herewith entered:
1. The restraints contained in the order of September 20 are continued in force during the pendency of this action. I note *433 that those restraints include prohibitions against striking and picketing.
2. Any teacher or other employee of the Board who has not returned to work on a regular basis by Wednesday, October 3, 1979 at 9 a.m. and who does not thereafter pursue the duties of his employment on a regular, diligent and good faith basis shall be deemed to have resigned his employment with the Board. Once a teacher or other employee is deemed to have resigned his employment hereunder, the Board shall not thereafter admit such person to any employment, and the Board shall not thereafter make any salary payment, fringe benefit payment or pension contribution with respect to any such person. The Board has no discretion or latitude whatever with respect to any such person. The provisions of paragraph 2 are automatic and self-enforcing.
3. To ensure compliance with the terms of paragraph 2 above, James R. Heaney, an attorney at law of New Jersey with offices in Morristown, is appointed as special monitor of the Board. From and after October 3, 1979 no payroll check, no fringe benefit payment check, no pension contribution check may be issued by the Board unless it is countersigned by Mr. Heaney. All banking institutions with which the Board has relevant accounts shall promptly be given a copy of this Opinion and Order by the Board and shall be bound by the provisions of this paragraph 3. The compensation of Mr. Heaney will be fixed from time to time by the court and shall be paid by the Board.
4. If any teacher or other employee of the Board who has been on strike makes a timely and proper return to work under the terms of this opinion and order, the Board shall treat such person with full professional dignity, shall give him appropriate work and shall pay all salary, fringe benefits and pension contributions to which he is entitled under general law and under any applicable present or future employment contract. There shall be absolutely no reprisal permitted against any such teacher or other employee.
*434 5. The Board shall personally serve every named defendant with a copy of this Opinion and Order no later than 11:00 p.m. on Thursday, September 27, 1979. A copy of this Opinion and Order shall be mailed by regular first class mail to every employee of the Board at the residence address currently shown on his employment records no later than 6:00 p.m. on Thursday, September 27, 1979.
6. The Board and the defendants shall continue to negotiate in good faith.
I hope that the teachers and other employees who work at the School will not see this present decision as a victory of any kind for the Board. The Board has not sought this decision and the Board has no control over its implementation. This decision represents my attempt as a judge to enforce the previous order of this court and to stop an unlawful strike without jailing or fining anyone. It is true that harsh consequences will be visited upon any striker who does not return to work by October 3, but I am giving all concerned ample advance warning about that. I have also attempted to set forth my thinking in this matter at some length in an effort to persuade all concerned that there should be obedience to court orders.
Teaching in a public school is one of the most worthwhile things a person can do. It is also one of the most rewarding of jobs in terms of human and spiritual accomplishment. It is a responsible job. It is a demanding and burdensome job. Society has a great stake in having public school teachers perform well. Those teachers should be well compensated. They should have very considerable professional autonomy as they perform their work. They should have an important voice in educational policy. Perhaps they should have some right to strike. But all of these are things which can be worked for, even fought for, within the framework of law and public order. There is no need to break the law.
Despite the imperfections of the educational system in which they work and of some of the legal rules under which they labor, *435 public school teachers cannot realistically claim that they are the victims of harsh oppression. In terms of total human satisfaction, their jobs are much more rewarding than most. Although their economic rewards should be increased, they are better than those of most people. Total working conditions are better than average, vacation benefits are vastly better than average, job security is far above average. When all is said and done, there simply is not any excuse for public school teachers to break the law or to disobey court orders.
I earnestly hope that no teacher will choose to surrender his job under the terms of this decision. On the other hand, I must say that if someone insists upon breaking the law and disobeying court orders after being given ample opportunity to reflect upon it, then he really does not deserve to be a teacher, and our youth should be protected from exposure to his negative and selfish attitudes and actions.
I realize, of course, that the terms of this decision do not fit into the traditional mold of equitable relief in aid of litigant's rights, nor do they square easily with traditional contempt of court concepts. Nevertheless, I think that they meet the challenges posed by this situation fairly and efficiently. They are appropriately tailored to the special needs of this case. Language borrowed from the late Justice Heher, who in turn relied on Pomeroy's Equity Jurisprudence, is apt here:
Equitable remedies "are distinguished for their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties." (Citing Pomeroy § 109). Sears, Roebuck & Co. v. Camp, 124 N.J. Eq. 403, 411 (E. & A. 1938).
See also Cooper v. Nutley Sun Printing Co., 36 N.J. 189, 198-99 (1961); American Assoc. Univ. Prof. v. Bloomfield College, 136 N.J. Super. 442 (App.Div. 1975); Fortugno v. Hudson Manure Co., 51 N.J. Super. 482 (App.Div. 1958); Grieco v. Grieco, 38 N.J. Super. *436 593 (App.Div. 1956); Union Minerals v. Port Realty, 129 N.J. Super. 41 (Ch.Div. 1974).
I do not believe that McAleer v. Jersey City Incinerator Authority, 79 N.J. Super. 142 (App.Div. 1963), precludes the remedy which I have fashioned in this case. In McAleer, the intent to resign was, in effect, retroactively imposed upon a refusal to work. In the present case, the resignation consequence of a refusal to work is being made clear in advance. Someone who deliberately refuses to work knowing that the refusal will entail a deemed resignation can fairly and properly be said to have resigned.
This opinion and order is issued and entered on September 26, 1979.