178 N.J. Super. 411 (1981)
429 A.2d 394
S.D.G., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
INVENTORY CONTROL COMPANY, A DIVISION OF G. EBEN ENTERPRISES INC., A CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 16, 1981.
Decided April 2, 1981.
*413 Before Judges ALLCORN, PRESSLER and FURMAN.
Michael Alpart, attorney for appellant.
Greenberg & Covitz, attorneys for respondent (Thomas F. Cohen on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
This dispute, arising out of a commercial month-to-month tenancy, raises a novel issue in this jurisdiction regarding the consequences of a tenant's late notice to quit. Both parties agree that the applicable common-law rule requires the tenant to give at least one month's notice to the landlord of his intention to quit. The controversy here is as to the effect of a notice given during a monthly period of an intention to quit at the end of that period. The question is whether such a notice is totally ineffective or, rather, will constitute a valid notice referable to the end of the next monthly period. The trial judge held that such a late notice is totally void, obligating the tenant, *414 after his removal, to continue paying rent for the premises until their reletting. We disagree and hold that in these circumstances the tenant's obligation continues only until the end of the monthly period following the one in which the late notice was given.
Defendant Inventory Control Company, the tenant, had leased an office in plaintiff's building for a term of five years expiring on October 31, 1976. Negotiations between the parties for a two-year extension of the lease proved to be unsuccessful, and on November 16, 1976 the tenant advised the landlord in writing that it would vacate the premises on November 30, 1976. There is some unresolved dispute as to exactly when the tenant did vacate, but there is no question that it did vacate no later than the end of the first week of December 1976. The landlord attempted to relet the premises but was unable to do so until April 1977. Accordingly, it brought this action seeking recovery of the monthly rent for December 1976 and January through March 1977. The tenant concedes its liability for the December rent. It claims, however, that its mid-November notice was effective as of December 31, 1976, shielding it from any liability for rent thereafter. The trial judge awarded plaintiff rent for all four months. We reverse this portion of the judgment since we are satisfied that the tenant's liability terminated on December 31, 1976.
It is clear that after the termination of the lease on October 31, 1976 the tenant's status became that of a month-to-month tenant on the same terms as set forth in the lease. N.J.S.A. 46:8-10. And see Heyman v. Bishop, 15 N.J. Super. 266, 269 (App.Div. 1951). There is no statute prescribing the requirements of a tenant's notice to the landlord of its intention to terminate a month-to-month tenancy.[1] Thus, the common-law *415 rule requiring at least one month's notice to quit is applicable. See, e.g., Burns v. West America Corp., 137 N.J. Super. 442 (Cty.Ct. 1975). And see Hertzberg v. Siegel, 8 N.J. Super. 226 (App.Div. 1950); Hanks v. Workmaster, 75 N.J.L., 73-74 (Sup.Ct. 1907); Steffens v. Earl, 40 N.J.L. 128, 134 (Sup.Ct. 1878). And although our courts have not apparently been called upon to address the question, a recognized corollary of the common-law rule is the proposition that if the notice is given during the same month in which the quit is to take place, it will be effective as of the end of the month following the month in which the short notice was given. See 3A Thompson, Real Property, § 1355 at 673-674 (1981). Cf. Worthington v. Moreland Truck Co., 140 Wash. 528, 250 P. 30 (Sup.Ct. 1926).
We are, furthermore, satisfied that the common-law rule which refers the effective date of the late notice of vacation to the end of the next ensuing monthly period is eminently sound as a matter of public policy, common sense and customary practice. We do not believe that any legitimate interest would be served by penalizing a month-to-month tenant for his late notice by subjecting him to indefinite liability for rent in the event of the landlord's inability to relet.[2] Certainly, such a penalty is beyond the legitimate expectations of the landlord who must be assumed to know that his month-to-month tenant can leave at any time without liability, provided one full month's notice is given. Clearly, the requirement of a month's notice is intended to afford the landlord a reasonable opportunity to secure another tenant. See e.g., Pennsylvania R.R. Co. v. L. Albert & Son, Inc., 26 N.J. Super. 508, 511 (App.Div.), certif. den., 13 N.J. 361 (1953). We are persuaded that that purpose is fully *416 satisfied by the rule of the deferred efficacy of the notice since the landlord thereby is afforded not only a full month in which to find another tenant but, in addition thereto, that portion of the prior month remaining after the date of the notice. Consequently, we hold that when the tenant gave notice to quit on November 16, 1976, it was obligated to pay rent in the absence of an interim reletting only through December 31, 1976. The judgment below must be accordingly modified to reflect the tenant's rent obligation as encompassing one month only.
The landlord has cross-appealed from the denial of its claims for damages on account of the tenant's damage to the carpeting and erection of an unauthorized wall partition. We are satisfied that the judge erred in disallowing these claims.
With respect to the first of these claims, the uncontradicted testimony of the landlord's principal established that a portion of the carpeting had been burned and stained with ink spots. The witness attempted to testify as to the replacement cost of the damaged carpeting. The judge was of the view, however, that the claim for damages could be proved only by expert testimony as to the carpeting's remaining useful life. In our view, however, the proper measure of damages in this situation is the amount required to restore the premises to the condition they were in at the inception of the original tenancy, reasonable wear and tear excepted. See, e.g., Braem v. Washington Piece Dye Works, 100 N.J.L. 209, 211 (Sup.Ct. 1924). And see Annotation, "Measure and items of damages for lessee's breach of covenant as to repairs," 80 A.L.R.2d 983 (1961). We are further satisfied that burns and ink stains do not constitute reasonable wear and tear of carpeting and that the landlord's principal was fully qualified to testify as to the reasonable replacement cost thereof, less depreciation to the extent that factor may be relevant. See Nixon v. Lawhon, 32 N.J. Super. 351 (App.Div. 1954).
With respect to the partition, the proofs show that the lease required that such alterations and additions to the premises *417 be made only with the written consent of the landlord and that no such consent was here given. The new tenant who occupied the premises requested the removal of the partition, which was accomplished by the landlord at a cost of $403. The trial judge was of the view that the landlord had waived its damages claim in respect of the partition by reason of the failure of its manager to object to its construction. We do not, however, view the manager's mere silence as the relinquishment of a known right. See West Jersey Title, etc., Co. v. Industrial Trust Co., 27 N.J. 144, 152 (1958).
The judgment below is reversed. We remand to the trial court for entry of judgment in favor of the plaintiff-landlord in the amount of one month's rent, for $403 representing the cost of removal of the partition, and for such further sum for damage to the carpeting as shall be determined following a hearing on this issue. We do not retain jurisdiction.
NOTES
[1] L. 1923, c. 72, required three months' notice in writing for termination of a month-to-month tenancy. That statute was, however, repealed four years later by L. 1927, c. 97, and there is now no statutory provision at all governing the tenant's notice to quit. As to the short-lived three-month provision, see McGeary v. Hyde, 3 N.J. Misc. 115, 127 A. 336 (Sup.Ct. 1925).
[2] We note in this regard that it is far from settled that a commercial landlord has a duty to mitigate by attempting to relet. See Sommer v. Kridel, 74 N.J. 446, 456, n. 4 (1977).