589 A.2d 1088
HOUSING AUTHORITY OF THE CITY OF NEWARK,
PLAINTIFF, v. ELLEN CALDWELL, DEFENDANT.

Superior Court of New Jersey
Law Division Essex County
Special Civil Part Landlord—Tenant

Decided February 4, 1991—As Revised April 2, 1991.

*Elio R. Mena* appeared for plaintiff (*Frank L. Armour,* Acting General Counsel)

*Ellen Caldwell,* appeared pro se.

FAST, J.S.C.

This was an action for the summary dispossession of defendant-tenant pursuant to *N.J.S.A.* 2A:18–61.1e, based upon an alleged substantial breach of lease. This opinion addresses the effect of a notice to quit with demand for possession that provided the tenant with a period to vacate which was shorter than the period required by *N.J.S.A.* 2A:18–61.2b. This opinion distinguishes cases with a notice with the proper period but terminating the tenancy other than on an anniversary date of the lease. I find a substantial difference, with a different conclusion. I also believe that this distinction has not been reported in New Jersey.

On September 28, 1990, plaintiff served defendant with a notice to cease. It alleged in essence that defendant had been "overcrowding" her apartment with an excessive number of people, contrary to the terms of her written lease agreement, and that failure to cease that conduct would result in a Notice to Quit and termination of her tenancy. I find that the notice gave defendant a clear and reasonable warning, *A.P. Development Corp. v. Band,* 113 *N.J.* 485, 496, 550 *A.*2d 1220 (1988), pursuant to *N.J.S.A.* 2A:18–61.1e, and was properly served.

Plaintiff proved that the Notice to Quit was served on November 27, 1990. It was served properly, but gave defendant less than one month notice of the termination of the tenancy

and for delivery of possession. The subject ground for eviction requires a one month notice of termination and demand for possession. *N.J.S.A.* 2A:18–61.2b. The subject complaint was filed less than one month after service of the Notice to Quit. [The complaint actually alleged two grounds for termination of the tenancy; one was the breach of the lease, and the other was alleged disorderly conduct. However, the Notice to Quit did not specify any disorderly conduct, and the matter proceeded on only the allegation of substantial breach of lease.]

Upon receipt of the Notice to Quit in evidence, I *sua sponte* raised the question of jurisdiction because of the "short period" in the notice and thereupon determined that the finding in *Harry's Village, Inc. v. Egg Harbor Tp.*, 89 *N.J.* 576, 446 *A.2d* 862 (1982) was not applicable. That case read a Notice to Quit (with raise in rent) as having a deferred efficacy so as to be effective on the next anniversary date of the lease, but at least one month from the date of service on defendant. *Harry's Village* said, specifically:

> "In this case, the active participation of the tenants association, represented at all times by counsel, renders overly protective the common law requirement that a notice to quit must state that the tenant quit the premises on the precise renewal date. We conclude that, where a landlord has substantially complied with the requirements of a notice to quit and inadvertently failed to give notice on the precise anniversary date, a notice to quit may be effective on the next anniversary date after receipt of the notice. Although the next ensuing anniversary date is more than one rental period later, that result is both fair and reasonable. . . .

> "Applying that principle to the facts of this case, the notice given by Harry's Village on May 24 to its tenants demanded possession on June 27. The next ensuing anniversary date 30 days after receipt of the notice was July 1. Accordingly, the rent increase granted by the Board became effective on that date." *Id.* at page 587, 446 *A.2d* 862.

The critical differences between the two cases are that 1) the notice given in *Harry's Village* was of at least the required period (but with an erroneous termination date), and 2) the ground for termination was not one which alleged some "fault" on the part of the tenant.

■ The period in this case, as noted above, and the filing of the complaint, were less than the statutorily required one month period. All of the subsections in *N.J.S.A.* 2A:18–61.2, imposing time periods for a Notice to Quit, actually refer *not* to the time periods of the Notice to Quit, but rather to the time periods "prior to the institution of the action." The significance is that filing a complaint before the expiration of the required period means that the cause of action has not yet accrued. The consequence is that the court has no jurisdiction to act in a summary dispossess action. (Contrast this with the equitable powers of a court of Chancery in a *plenary* action to require a tenant to commence removal before the stated expiration date in a lease, *Union Minerals v. Port Realty,* 129 *N.J.Super.* 41, 322 *A.*2d 192 (Ch.Div.1974).)

As to the second difference, the *ground* for eviction, it may be noted that not all of the 14 subsections in *N.J.S.A.* 2A:18–61.1 requiring the service of a Notice to Quit, result from alleged "fault" on the part of the tenant. Specifically, subsections g (compliance with various governmental conditions), h (permanent retirement of the unit from residential use), i (failure to accept proposed reasonable lease changes), k (certain conversions to condominium or cooperative form of ownership), and *l* (personal occupancy by the owner—or a purchaser—of certain units), require no "fault" on the part of the tenant. While I note that subsection f, failure to pay an increase in rent, does not require a Notice to Quit under 61.2, it would appear to fall within the concept of "fault" inasmuch as it, like non-payment of rent, does not require any notice under 61.2. Nevertheless 61.1*f* does require termination (but not a demand for possession) on an anniversary date inasmuch as an increase cannot become effective during the term of a tenancy. That was the specific issue decided in *Harry's Village, supra*—the effective date of an increase in rent, not the right to summary dispossession. That issue is not involved in this case.

■ The remaining subsections, including e, which is material here, may be said to require "fault" on the part of the tenant. The difference between these categories is that cases based on the "fault" concept do not require that the Notice to Quit terminate the tenancy on an anniversary date. Cases deciding the effective date of termination of a lease in "non-fault" cases are not controlling in "fault" cases.

Another perspective of a related issue is found in *S.D.G. v. Inventory Control Co.*, 178 *N.J.Super.* 411, 429 *A.*2d 394 (App.Div.1981). In that case a landlord was suing a former tenant for unpaid rent. The court stated that:

> "We are, furthermore, satisfied that the common law rule which refers to the effective date of the late notice of vacation to the next ensuing monthly period is emminently sound as a matter of public policy, common sense and customary practice. We do not believe that any legitimate interest would be served by penalizing a month-to-month tenant for his late notice by subjecting him to indefinite liability for rent in the event of the landlord's inability to relet.... We are persuaded that the purpose is fully satisfied by the rule of the *deferred efficacy* of the notice since the landlord thereby is afforded not only a full month in which to find another tenant but, in addition thereto, that portion of the prior month remaining after the date of the notice." (Emp. added) *Id.* at pages 415–416, 429 *A.*2d 394.

■ It would appear that the policy of deferred efficacy would have at least the same appeal in situations where the landlord is suing to evict the tenant based on a ground requiring "fault." The consequence would be that a "short" notice should be read as of a proper period and effective on the next appropriate date. However, I do not accept that policy for the following reasons:

1) The court has no discretion in requiring satisfaction of the period required for the notice. The Notice to Quit is jurisdictional. *25 Fairmount Ave., Inc. v. Stockton*, 130 *N.J.Super.* 276, 287, 326 *A.*2d 106 (Bergen Cty. Ct.1974); *Stamboulos v. Mc Kee*, 134 *N.J.Super.* 567, 342 *A.*2d 529 (App.Div.1975); *Kroll Realty, Inc. v. Fuentes*, 163 *N.J.Super.* 23, 26, 394 *A.*2d 140 (App.Div.1978). As noted above, the cause of action will not have accrued until the tenant remains in possession after the effective date of a proper notice. The key to the eviction is

within the control of the landlord; that key is to serve a notice proper in all respects. The landlord is solely in control of the preparation and service of that notice. Satisfaction of the legislative mandates, and nothing less, is a prerequisite to jurisdiction.

2) As a very practical matter, permitting a landlord to proceed on a short notice would give an advantage to a landlord with a deficient notice over a landlord who waits to file a complaint until the cause of action has matured. Control of the notice being in the landlord, the focus on this point is not with the alleged fault of the tenant; it is on the accrual of the cause of action. As in this case, the landlord must serve a notice with a proper period. Upon expiration of that period, if the tenant remains in possession, the cause of action will have accrued and then the landlord may file a new complaint.

This complaint is dismissed.