208 N.J. Super. 577 (1986)
506 A.2d 770
OLYMPIC INDUSTRIAL PARK, A NEW JERSEY URBAN RENEWAL PARTNERSHIP, PLAINTIFF-RESPONDENT,
v.
P.L., INC., A NEW JERSEY CORPORATION, T/A PERRI SUPPLIES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 11, 1986.
Decided March 11, 1986.
*578 Before Judges PRESSLER, DREIER and GRUCCIO.
Aldan O. Markson, attorney for appellant.
Farer, Siegal & Fersko, attorneys for respondent (David B. Farer, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Defendant P.L., Inc., a commercial tenant of plaintiff Olympic Industrial Park, appeals from the denial of its motion made pursuant to R. 4:50-1 for an order vacating the judgment of possession entered against it. We reverse, concluding that under the circumstances a proper exercise of judicial discretion mandated the relief defendant sought.
There is no material dispute of fact. Defendant, which has occupied the demised premises since 1980 at an annual base *579 rent of almost $120,000, operates thereon its roofing and siding business. It employs 48 people and does about $7,000,000 a year in gross sales. The corporation is wholly owned by Louis Perri, who is also its president and the personal guarantor of its lease obligations. Monthly installments of rent are due on the fifteenth day of each month.
According to Perri's affidavit submitted in support of the R. 4:50-1 motion, he telephoned the office of Edward Cantor, plaintiff's principal, on June 16 and spoke to "a man in the office" about a late rent payment. The person with whom he spoke assured him that the late payment would be acceptable "provided I paid the late charge of five percent." According to the plaintiff's affidavit in opposition, it had during the course of the tenancy accepted late payments accompanied by the late charge 18 times. Perri's affidavit further states that on June 25 he left for Italy where his mother was critically ill suffering from a brain tumor. He left his brother Ralph, the corporation's purchasing manager, "in general charge of the business, although he has no authority to do anything significant without my express authority." On July 2 Ralph advised Perri by transatlantic telephone call to Italy that "eviction papers had come in the mail" alleging nonpayment of both the May and the June rent. Perri advised his brother first that the May rent and tax surcharge had been paid and second that the landlord had agreed to accept the June rent late if accompanied by the late charge. On July 10 Perri and his brother again discussed the matter by telephone, and Ralph told Perri that the "tenancy case was still pending." Perri immediately telephoned plaintiff's attorneys, who instructed him to call Cantor. He then telephoned Cantor, who refused to speak with him. Because of this impasse, as Perri's affidavit continues:
Notwithstanding that my mother was in the hospital in a coma, I arranged to return to the United States immediately. The place where I was staying was Casenza, Italy, about a ten (10) hour drive from the airport in Rome. When I arrived in Rome, I discovered that there were no seats available on any direct *580 flight to the United States. I then arranged to fly home by way of Buenos Aires, Argentina, leaving Rome on July 11, 1985 at 5:00 A.M. (Italian time). I arrived at Kennedy Airport on July 12, 1985 at 9:00 A.M. (New York time). I immediately proceeded to the office of the Plaintiff and tendered certified checks for the amount due, including rent, interest and late charges. I gave these checks to Mr. Kantor personally. He accepted them and I have not received them back from him.
Cantor has, it appears, accepted not only those payments but each tender of monthly rent thereafter.
On July 11, while Perri was on his way from Rome to New York via Buenos Aires, plaintiff's summary dispossess action was tried. Ralph Perri did not arrange to have an attorney present on behalf of defendant corporation to seek an adjournment or to take any other action. Nor did he seek an adjournment himself or advise the trial judge of any of the foregoing events. He simply represented to the court that the June rent was indeed owing and that he, Ralph, could not pay it in full by the end of that business day. The judgment of possession was thereupon entered.
When all of these facts were brought to the same judge's attention as a result of the ensuing motion for relief pursuant to R. 4:50-1, he expressed his understanding that he was without any authority to grant relief.
To begin with, we view the judgment of possession entered against defendant as a default judgment. A corporation is prohibited by R. 1:21-1(c) from appearing pro se except in the limited situations therein enumerated which do not include an appearance in the Special Civil Part in a summary dispossess action. The purported appearance of Ralph Perri was, therefore, a legal nullity. It was also a factual nullity in that he had no authority from the corporation to speak for it, a circumstance which was not in any way inquired into by the trial judge. There was, therefore, no appearance on behalf of defendant corporation. Accordingly, all of the consequences of *581 a default judgment attached to the judgment of possession then entered.
It is virtually axiomatic as a matter of longstanding practice and procedure in this State that a motion to vacate a default judgment must be "viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." Marder v. Realty Construction Co., 84 N.J. Super. 313, 319 (App.Div. 1964), aff'd, 43 N.J. 508 (1964). The prerequisites for relief are only that defendant's failure to answer or otherwise to appear must have been excusable under the circumstances and that he had a meritorious defense to the action. See, e.g., Marder, supra at 318. And see generally Manning Engineering, Inc. v. Hudson Cty. Park Comm'n, 74 N.J. 113, 120-131 (1977); Court Invest. Co. v. Perillo, 48 N.J. 334 (1966); Bergen-Eastern Corp. v. Koss, 178 N.J. Super. 42 (App.Div. 1981), appeal dism., 88 N.J. 499 (1981).
The excusability of defendant's neglect here was obvious. Defendant's sole owner and sole principal was thousands of miles away attending to his critically ill mother. His transatlantic call was refused by plaintiff's principal, necessitating his immediate, burdensome and circuitous return to the United States. The meritoriousness of the defense is also obvious. It is well settled that pursuant to N.J.S.A. 2A:18-55 a defaulting tenant is entitled to a dismissal of the dispossess proceeding if he pays the rent owing plus costs to the clerk of the court during the same court day in which the judgment of possession has been entered. See, e.g., Stanger v. Ridgeway, 171 N.J. Super. 466, 473 (App.Div. 1979); Saveriano v. Saracco, 97 N.J. Super. 43, 46-47 (App.Div. 1967). The entry of a judgment of possession in the tenant's absence obviously deprives him of this opportunity to remain in possession and so deprived the tenant here, who made full payment within 24 hours after the judgment of possession was entered and on the very day of his return to the United States.
*582 We further are persuaded that the equities, to the extent they affect the exercise of judicial discretion on an R. 4:50-1 motion, all favor defendant. Plaintiff's own affidavit makes clear that its primary motive for pursuing its remedy against defendant is not to effect its removal but rather to require it to renegotiate the lease to plaintiff's advantage prior to the expiration of its term. It does not dispute defendant's sworn assertion that the only alternative left to it, since it cannot effectively remove on short notice, would be its insolvency and the loss of employment of its 48 workers. On the other hand, we note that plaintiff has accepted not only the late June rent and all rent subsequently due but has also had the benefit of the late charges whenever the rent has been late.
In view of all of the foregoing circumstances, we see no rational justification for the trial judge to have refused to exercise his discretion by vacating the default judgment of possession. The trial judge was apparently unaware that R. 4:50-1 and all of the equitable doctrines which it embraces are applicable to the Special Civil Part. See R. 6:6-1. Apparently he was relying on the dispossess statute alone as exclusively delineating the scope of his judicial power. There is, however, no statutory authority impinging upon the court's inherent right, as implemented by rule of court, to grant relief from its own judgments.
In view of our determination that defendant was entitled to relief pursuant to R. 4:50-1(c), we need not consider any of the other issues advanced by it or any of the factual disputes respecting the provision by the lease of a five-day grace period or the right thereunder of the tenant to notice of default as a prerequisite to the summary dispossess action.
The order denying the motion for vacation of the summary dispossess motion entered on June 11, 1985 is reversed. We remand to the Special Civil Part for the entry of an order dismissing the proceeding.