**In the Matter of Gary D. DiCAMILLO, Debtor.**

**Bankruptcy No. 97–10458.**

United States Bankruptcy Court, D. New Jersey.

March 13, 1997.

---

Steven N. Taieb, Mt. Laurel, NJ, for Debtor.

James T. Klimek, Jr., Burlington, NJ, Pro Se.

### AMENDED OPINION

JUDITH H. WIZMUR, Bankruptcy Judge.

Before the court is an application by debtor's landlord for relief from the automatic stay to allow a warrant for the debtor's removal to be issued to enforce the landlord's pre-petition judgment for possession. The debtor proposes to assume his residential lease and to cure the rental arrearages owed to the landlord as part of his Chapter 13 plan.

We agree with the debtor that his interest in the lease did not "expire" upon the entry of a judgment of possession, and that he may assume the lease under § 365(a). However, we must reject debtor's proposal to cure arrearages on the lease over a 36–month period. The proposal does not cure arrearages promptly, as required under 11 U.S.C. § 365(b)(1).

1. Section 1322(b) provides in pertinent part that a plan may:

(7) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section.

### FACTS

Debtor, Gary D. DiCamillo, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on January 15, 1997. Debtor scheduled as an unsecured nonpriority claim the rental arrearages owed to his landlord, James T. Klimek, Jr., in the amount of $2,300. Debtor proposes through a Chapter 13 plan to assume the residential lease, to cure the $2,300 in arrearages owed to the landlord by making payments of $63.89 per month over 36 months, and to make regular monthly rental payments to the landlord. The rental arrearages are the only debt provided for under debtor's plan. The term of the lease is from September 1, 1996 to August 31, 1997.

On January 30, 1997, debtor's landlord moved for relief from the automatic stay to allow him to obtain a warrant for the debtor's removal. A judgment for possession was entered against the debtor in state court on January 10, 1997. Before a warrant for removal was issued, debtor filed this bankruptcy proceeding.

### DISCUSSION

A. *Assumption of Unexpired Lease Under Section 365(a).*

Under 11 U.S.C. § 1322(b)(7)[1] and § 365(a),[2] a Chapter 13 debtor may assume or reject an "unexpired lease of the debtor." The term "unexpired" is not defined in the Code. We are asked here to determine whether the pre-petition entry of a judgment of possession in state court serves to classify the residential lease as "expired".

Under New Jersey law, a landlord may use a summary dispossess action as an expedited remedy for possession. N.J.S.A. 2A:18–53; 2A:18–61.1. The tenant has until the day of the judgment to pay his past due rent in order to avoid the summary dispos-

2. Section 365 provides in pertinent part that:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

sess action. N.J.S.A. 2A:18–55.[3] *See Housing Authority of Morristown v. Little*, 135 N.J. 274, 281, 639 A.2d 286 (1994); *Musselman v. Carroll*, 289 N.J.Super. 549, 555–56, 674 A.2d 612 (App.Div.1996); *Olympic Indus. Park v. P.L., Inc.*, 208 N.J.Super. 577, 581, 506 A.2d 770 (App.Div.), *certif. denied* 104 N.J. 453, 517 A.2d 440 (1986). If the tenant fails to pay his rental arrearages, a judgment for possession is entered. The lessor is entitled to have a warrant of removal issued three days later. N.J.S.A. 2A:18–57.[4] The warrant may be executed three days after its issuance. N.J.S.A. 2A:42–10.16. The additional time is designed to allow the tenant to remove his belongings from the property and to seek other quarters. *Stanger v. Ridgeway*, 171 N.J.Super 466, 473, 410 A.2d 59 (App.Div.1979).

▆▆▆ Following the actual execution of the warrant for possession, the New Jersey Superior Court, Law Division, Special Civil Part retains jurisdiction for 10 days to allow the tenant to seek "lawful relief". N.J.S.A. 2A:42–10.16. A form of relief that is commonly sought is a hardship stay of eviction under the Tenant Hardship Act, N.J.S.A.

2A:42–10.6. *Housing Authority of Morristown*, 135 N.J. at 289, 639 A.2d 286. A stay under the Tenant Hardship Act offers to the tenant the opportunity to remain in the property for up to an additional six months from the time of the entry of the judgment of possession.[5] *See also Stanger v. Ridgeway*, 171 N.J.Super. 466, 410 A.2d 59 (App.Div. 1979) (The warrant of removal is merely the means by which the landlord can enforce the underlying judgment).

▆▆▆ We believe that under New Jersey law, the entry of a judgment of possession terminates the tenant's entitlement to possession. As noted above, the processes of issuing and executing a warrant of removal constitute only a "grace period" for the tenant. The prospect of remaining in possession for up to six months upon a showing of hardship does not provide the tenant with legal recourse to revive the lease. The tenant "may nullify the judgment [of possession] only if he pays the amount found due and owing on the day judgment is entered." *Id.* at 473, 410 A.2d 59.

Courts have disagreed on the opportunity of a Chapter 13 debtor to assume an unex-

**3.** N.J.S.A. 2A:18–55 provides that:

If, in actions instituted under paragraph "b" of section 2A:18–53 of this title, the tenant or person in possession of the demised premises shall at any time on or before entry of final judgment, pay to the clerk of the court the rent claimed to be in default, together with the accrued costs of the proceedings, all proceedings shall be stopped. The receipt of the clerk shall be evidence of such payment.

The clerk shall forthwith pay all moneys so received to the landlord, his agent or assigns.

**4.** N.J.S.A. 2A:18–57 provides that:

If no sufficient cause is shown to the contrary when the action comes on for trial, the court shall issue its warrant to any officer of the court, commanding him to remove all persons from the premises, and to put the claimant into full possession thereof, and to levy and make the costs out of the goods and chattels of the person in possession.

No warrant of removal shall issue until the expiration of 3 days after entry of judgment for possession, except as provided for in chapter 42 of this Title.

**5.** Relief from a judgment of possession is available under New Jersey Court Rule 4:50–1 on equitable grounds. *See, e.g., Housing Authority of Morristown*, 135 N.J. at 290–91, 639 A.2d 286

(trial court vacated judgment for possession after warrant of removal had been executed), *Olympic Industrial Park*, 208 N.J.Super. at 581–82, 506 A.2d 770 (equities favored vacating judgment where payment was made within 24 hours of entry of judgment, tenant's absence from proceeding was excusable and plaintiff's motive was not removal but renegotiation of the lease); and *Stanger*, 171 N.J.Super. at 473–74, 410 A.2d 59 (it would be inequitable for tenant to be evicted where he had sufficient funds to pay rent on date of judgment of possession, was given three additional days to pay by the trial court judge, the plaintiff did not object and payment was made within that time period). In applying Rule 4:50–1, the New Jersey Supreme Court has stressed that "[c]ourts should use Rule 4:50–1 sparingly, in exceptional situations; the Rule is designed to provide relief from judgments in situations in which, were it not applied, a grave injustice would occur." *Housing Authority of Morristown*, 135 N.J. at 289, 639 A.2d 286. "Application of [Rule 4:50–1(f)] to summary-dispossess proceedings is appropriate only in exceptional circumstances, and requires a trial court to weigh carefully all relevant evidence in determining whether the specific grounds advanced to support relief under the Rule are sufficient to override the strong countervailing interest favoring finality of judgments." *Id.* at 294, 639 A.2d 286.

pired lease under § 365(a) where the lease has been terminated under state law prior to the filing of the petition. Some courts have concluded that a residential lease may be in default or may have been terminated under state law and may still be assumable in bankruptcy as an unexpired lease. These courts have looked to state law, not to determine the point at which a residential lease is considered to be terminated, but to determine the point at which the tenant's leasehold interest, including actual possessory interest, is finally and conclusively extinguished, so that there is nothing to assume at the time the petition is filed. *See, e.g., In re Morgan,* 181 B.R. 579, 583 (Bankr.N.D.Ala.1994) (the terms "unexpired" and "terminated" have distinct meanings); *In re Talley,* 69 B.R. 219 (Bankr.M.D.Tenn.1986) (Congress was cognizant of the difference in the terms, as evidenced by section 365(c)(3) and 362(b)(10)). *See also In re Ross,* 142 B.R. 1013 (S.D.Fla. 1992), *aff'd.* 987 F.2d 774 (11th Cir.1993).

In *In re Morgan,* 181 B.R. 579, 583 (Bankr.N.D.Ala.1994), the court declined to accept a lessor's argument that the words "expired" and "terminated" were synonymous for purposes of § 365. The court reflected that if the lessor was correct, § 365(c)(3) would be superfluous, and the use of both terms in §§ 541(b)(2) and 362(b)(10) would be meaningless. *Id.* Instead, the court reviewed the plain meaning of the two terms, as directed by the Supreme Court in *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989), and concluded that "the word 'expired' denotes the natural or inevitable end to a contract or lease by lapse of time, while the word 'terminated' denotes the unnatural or premature end to a contract or lease as the result of breach or forfeiture." 181 B.R. at 584. The court concluded that "a lease which has been terminated under non-bankruptcy law may, despite that fact, be an 'unexpired lease' under section 365, and, … may be assumed by a Chapter 13 debtor even though the lease may have been terminated under nonbankruptcy law prior to bankruptcy." *Id.*

If the lease had expired by its terms prepetition, there would be nothing for the debt-

or to assume. If, on the other hand, the lease had been terminated by some action on the part of either party, the debtor's right to assume the lease under section 365 would continue to exist only as long as the debtor held "some possessory nexus or toehold in the property. Once that possessory toehold is lost, no 'interest' exists to form the basis of an assumption under section 365." *Id.* at 585. Under Alabama law, the court found that that "toehold" was lost once a writ of restitution was issued restoring possession to the lessor, with no stay pending appeal. *Id.*

Other courts have declined to draw a federal distinction between the terms "expired" and "terminated" in the assumption of residential leases, determining instead that there is no indication that "Congress intended its choice of words to create expanded *federal* protection for residential leases." *Robinson v. Chicago Housing Authority,* 54 F.3d 316, 319 (7th Cir.1995). *See also In re Finkley,* 203 B.R. 95 (Bankr.N.D.Ill.1996) (expanding upon *Robinson,* the court finds that under Illinois law the commencement of an action to obtain possession terminates the tenant's rights and therefore his ability to assume the lease under section 365). These courts turn to state law to determine whether or not the lease has terminated for § 365 assumption purposes.

In *Robinson v. Chicago Housing Authority,* 54 F.3d 316 (7th Cir.1995), the Seventh Circuit declined to limit the meaning of the term "unexpired" in § 365(a) to only those leases whose stated terms have not run, and rejected the prospect that a residential lease that had been determined by a state court "to be at an end" could be revived upon the filing of a bankruptcy petition. *Id.* at 320. The Seventh Circuit turned to state law to resolve the question of "when the tenant is no longer entitled to possession." *Id.* at 321. To end entitlement to possession, the landlord must have taken all of the necessary procedural steps to repossess the premises, and the tenant must retain no further legal recourse to revive the lease. *Id.* Under Illinois landlord-tenant law, a tenant does not retain a right to possession after a judgment of possession has been entered. Therefore, a tenant/debtor against whom a judgment of

possession has been entered cannot assume a lease under § 365(a) because the lease has "expired" under state law. *Id.* at 322.

■ We believe that the *Morgan* and *Talley* interpretations of § 365(a), drawing distinction between "expiration" and "termination", and recognizing that a residential debtor may assume an unexpired lease even after the lease has been terminated under state law, reflect more closely the actual language of the statute. We presume that the plain meaning of the language used by Congress in the statute evidences its intent in enacting the provision. *United States v. Knox*, 32 F.3d 733, 744 (3d Cir.1994), *cert. denied* — U.S. —, 115 S.Ct. 897, 130 L.Ed.2d 782 (1995). Where the meaning of the statute is plain, our only function is "to enforce it according to its terms." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993).

Section 365(a), allowing a trustee (or Chapter 13 debtor under § 1322(b)(7)) to assume an unexpired lease, applies to both residential and nonresidential leases. Under § 365(c)(3), as amended in 1984,[6] a trustee may not assume a nonresidential lease which has "terminated under applicable nonbankruptcy law" prior to the filing of the petition.

■ In reconciling these sections, we reflect that a nonresidential tenant/debtor may assume an unexpired lease, but only if the lease has not been terminated pre-petition under state law. In contrast, a residential tenant/debtor may assume an unexpired lease in the context of a Chapter 13 plan, even if the lease may be deemed "terminated" pre-petition under state law. We cannot insert the expression "not terminated" as an additional assumption requirement for a residential lessee under § 365(a). Nor can we ignore the specific Congressional distinction drawn in § 365(c)(3) between "termination" and "expiration" for nonresidential lessees only.

■ We note that the dictionary definitions of the terms differ as well, with the term to "expire" meaning "to come to an end", and the word "terminate" meaning "to bring to an end." *In re Morgan*, 181 B.R. 579, 583 (Bankr.N.D.Ala.1994) (citing Webster's II New Riverside University Dictionary at 454, 1194 (1988)). *See also* 11 U.S.C. § 365(d)(5) and (6) (a trustee may assume or reject the lease of an aircraft terminal or aircraft gate until the occurrence of a "termination event" as defined in subsection (6)).

We find additional support for the distinction to be drawn between the terms "expiration" and "termination" in other Code provisions. Under § 541(b)(2),[7] a debtor's pre-petition interest in a nonresidential lease "that has terminated at the expiration of the stated term of such lease" is not included as property of the bankruptcy estate. In this statute, establishing the point at which a nonresidential leasehold interest is no longer property of the estate, the termination point and the expiration point coincide. Nevertheless, each term must be given meaning. If the terms "expiration" and "termination" were interchangeable, the provision would either specify a lessee's "terminated" interest or "expired" interest. Instead, the section refers to a lease that has "terminated at the expiration of the stated term of such lease."

Similarly, under § 362(b)(10),[8] proceedings by a landlord to obtain possession of nonresi-

---

6. In relevant part, section 365(c)(3) provides:
 (c) The trustee may not assume or assign an executory contract or unexpired lease of the debtor ... if—
 (3) such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief.

7. Section 541(b)(2) provides that:
 (b) Property of the estate does not include—
 (2) any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the

stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case.

8. Section 362(b)(10) provides that:
 (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—

dential property are not automatically stayed where the lease is "terminated by the expiration of the stated term of the lease" either before the filing or during the pendency of the case. The statute specifies the manner of termination to which the automatic stay does not apply, to wit, termination "by" expiration of the stated term of the lease. Presumably, if a lease terminated otherwise than by expiration of the term, and the debtor is still in possession at the time of the commencement of the case, the automatic stay is activated against a landlord's pursuit to gain possession of the property. Again, the use of both the terms "expiration" and "termination" suggests that the terms are not interchangeable.

We rely on the plain meaning of the term "unexpired", as used in § 365(a), and as juxtaposed against the term "terminated" in § 365(c)(3), § 541(b)(2) and § 362(b)(10), to conclude that termination of a residential lease under state law does not preclude assumption of the lease under § 365(a). Although reference to legislative history is not required, *Knox,* 32 F.3d at 744 (citing to *TVA v. Hill,* 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978)), we note the sparse history of § 365(c)(3), particularly because the *Robinson* court relied in part on an excerpt from the legislative history to support its conclusion that a terminated residential lease under state law cannot be assumed under federal bankruptcy law.

Section 365(c), enacted within the Bankruptcy Amendments and Federal Judgeship Act of 1984, was intended to benefit shopping center owners and tenants. The section enables landlords to dispossess commercial lessees if their leases have been terminated prepetition under state law. The section does not pertain to residential leases. *In re Robinson,* 54 F.3d at 319. The only reference to residential leases in the legislative history is the following:

[a] distinction between residential and non-residential leases is made here and in oth-er provisions of this subtitle . . . in order to avoid depriving residential tenants of whatever consumer protections they may have under applicable non-bankruptcy law.

S.Rep. 98–65, 98th Cong. 1st Sess. 37 (1983). The *Robinson* court opined that "rather than supporting [the debtor's] claim that Congress was suggesting enhanced *federal* protections for residential lessees, the legislative history here supports the established practice of looking to *state* law to determine whether a lease is unexpired." *Id.*

We read the legislative history of § 365(c)(3), which serves to cut off the opportunity of commercial tenants to assume a lease after termination, to reflect Congressional intent to protect residential tenants from the same result. Congress obviously did not intend, by enacting § 365(c)(3), to cut off the opportunity of residential tenants to assume leases if their leases had been terminated by operation of state law pre-petition. If Congress distinguished between termination and expiration, as we believe it did, and expressed its intention, in the legislative history of § 363(c)(3), to protect residential tenants and to afford them the consumer protections they may have under state law, the only reading consistent with these two precepts is that residential tenants may assume an unexpired lease under § 365(a) even after termination under state law.

In *Robinson,* the court expressed concern about being able to revive a lease that has otherwise been determined to be terminated by a state court "on grounds of rational policy." *Id.* We do not believe that the judicial function of interpreting a statutory scheme encompasses the evaluation of policy questions raised by the statutes. Nonetheless, we note, as the *Morgan* court did, that in the Chapter 13 context, Congress has provided certain protections to homeowners to cure default and reinstate mortgages notwithstanding applicable nonbankruptcy law. *See, e.g.,* 11 U.S.C. § 1322(c)(1). "Surely, Congress did not intend to protect home-

---

(10) under subsection (a) of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property.

owners while ignoring the plight of home renters." *In re Morgan*, 181 B.R. at 587.

Based on the statutory framework and case law described above, we conclude that a Chapter 13 debtor may assume an unexpired residential lease under § 365(a) even if the lease has been terminated under state law.

 Notwithstanding our disagreement with the *Robinson* court on the question of the interchangeability of the terms "expiration" and "termination", we understand and affirm the Seventh Circuit's reminder that when a debtor's legal and equitable interests in property are terminated pre-petition, "the Bankruptcy Court cannot then cultivate rights where none can grow." *In re Robinson*, 54 F.3d at 320 (citing *In re Triangle Laboratories, Inc.*, 663 F.2d 463, 468 (3d Cir.1981)). We do not perceive an inconsistency between a reading of § 365(a) that permits a debtor to assume an unexpired residential lease after termination under state law with a recognition that when a debtor's leasehold interest is totally and completely extinguished, including his or her possessory interest, that there is nothing to assume within the bankruptcy process. It is at this point that we note an intersection between the *Morgan* and *Talley* cases and the *Robinson* case. Both lines of cases look to state law to determine the "end" of the leasehold interest, although the "end" is pinpointed somewhat differently. Under *Morgan* and *Talley*, the "end" of a leasehold interest is the point at which all of the debtor's interest has been "wholly extinguished", including any possessory interest that might otherwise establish a "nexus" or "toehold" to the property. *In re Morgan*, 181 B.R. at 585. *See also In re Talley*, 69 B.R. at 225 (termination of the landlord tenant relationship is fixed at the point in time at which the process of the law physically severs the debtor from the tenancy.) In *Robinson*, in contrast, the "end" of the landlord tenant relationship is "when the tenant is no longer entitled to possession". *In re Robinson*, 54 F.3d at 321. In other words, even if the tenant is still in actual possession of the premises, if the landlord has completed the necessary procedural steps and the tenant no longer has legal recourse to revive the lease,

the leasehold interest is considered ended for § 365(a) assumption purposes. *Cf. In re Mims*, 195 B.R. 472, 474 (Bankr.W.D.Okla. 1996) (the *Robinson* and *Talley* formulations "are entirely compatible", the difference in the results coming from differences in the courts' interpretations of their respective state laws).

[18] With regard to a consideration of the "end" of a debtor's residential leasehold interest, we note that both sections 1322(b)(7) and 365(a) offer to the Chapter 13 debtor the opportunity to assume an unexpired lease "of the debtor". We read this language to require a retention of some leasehold interest on the part of the debtor, even after termination under state law, which may be only a possessory interest. In this regard, we note as well that, in other contexts, a possessory interest has been determined to be sufficient to qualify as property of the estate under 11 U.S.C. § 541 and to invoke the automatic stay under 11 U.S.C. § 362. *See, e.g., In re Di Giorgio*, 200 B.R. 664 (C.D.Cal.1996); *In re Convenient Food Mart No. 144, Inc.*, 968 F.2d 592 (6th Cir. 1992); *In re Atlantic Business & Community Corp.*, 901 F.2d 325 (3d Cir.1990).

 In this case, we conclude that the entry of a judgment of possession in favor of the landlord under New Jersey law does not preclude the debtor from seeking to assume his unexpired lease under § 365(a).

**B.** *Curing Default of Unexpired Lease Under Section 365(b).*

Under § 1322(b)(7), a debtor may assume an unexpired lease "subject to section 365 of this title". If there has been a default in a lease, the debtor may only assume the lease if he:

> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

Here, debtor has defaulted in rental payments. He proposes to pay $2,300 of arrearages to the landlord over the course of three years.

 The term "promptly" under § 365(b)(1) is not defined. The term probably suggests a shorter period of time than the "reasonable time" to cure defaults in a long-term debt under § 1322(b)(5).[9] KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, § 4.89 at 4–191 (2d Ed.1994). Whether a cure is prompt must be determined on the facts and circumstances of each case. The courts have consistently held that a proposed cure over a period of two years or more was not "prompt" for purposes of § 365(b)(1). *See, e.g., In re Flugel,* 197 B.R. 92, 97 (Bankr. S.D.Cal.1996) (proposed cure over 10 years not prompt); *In re Embers 86th St., Inc.,* 184 B.R. 892, 901–02 (Bankr.S.D.N.Y.1995) (29 months); *In re Liggins,* 145 B.R. 227 (Bankr. E.D.Va.1992) (48–60 months); *In re Lloyd,* No. 92–12508S, 1992 WL 167047 (Bankr. E.D.Pa. July 6, 1992) (3–5 years); *In re Yokley,* 99 B.R. 394 (Bankr.M.D.Tenn.1989) (2 years).[10]

 The three-year "cure" of rental arrearages proposed by the debtor here cannot constitute adequate assurance that the debtor will promptly cure his default. Admittedly, the task of determining what constitutes a "prompt" cure is an arbitrary one. On this record, we readily conclude that three years to cure is not prompt.

Nor can we speculate that debtor would be able to offer an alternate arrangement that would cure his default in a shorter time frame. This is the only debt provided for in the debtor's plan. He recites in his certification in opposition to the landlord's motion to vacate stay that he earns $475 every two weeks. The monthly lease payment is $800. Debtor has insufficient income to support the satisfaction of arrearages in a "prompt" manner.

Because we are convinced that the debtor cannot provide adequate assurance that he will promptly cure his default, as required under 11 U.S.C. § 365(b)(1)(A), the landlord's motion for relief from the stay is granted.

---

9. Section 1322(b)(5) provides in pertinent part:

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . . . .

(5) ... provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

10. Some courts have allowed a cure over the course of two to three years in special circumstances. *See, e.g., In re Whitsett,* 163 B.R. 752, 755 (Bankr.E.D.Pa.1994) (cure allowed over 2 years where lease involved federally subsidized housing and debtor had to satisfy strict payment requirements and remain current or her case would be dismissed); *In re Coors of North Miss., Inc.,* 27 B.R. 918 (Bankr.N.D.Miss.1983) (cure allowed over 3 years in light of "prospective longevity of successful business operation"). No special circumstances are presented here.