**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3170-19

KEYSTONE SERVICING
COMPANY, LLC,

     Plaintiff-Respondent,

v.

BLOCK 365, LOT 9
713 S 17th St., CITY OF
NEWARK, STATE OF NEW
JERSEY,

ASSESSED TO:  ARMANI
REALTY GROUP, LLC,

     Defendant-Appellant.

_____

        Argued October 5, 2021 – Decided October 22, 2021

        Before Judges Fisher and DeAlmeida.

        On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. F-8211-19.

        Andrew R. Turner argued the cause for appellant (Turner Law Firm, LLC, attorneys; Andrew R. Turner, of counsel and on the briefs).

Amber J. Monroe argued the cause for respondent (Gary C. Zeitz, LLC, attorneys; Amber J. Monroe, on the brief).

PER CURIAM

In this tax sale certificate foreclosure action, we consider the property owner's argument that the chancery judge abused his discretion in denying a motion to vacate a default judgment. Because there was a genuine factual dispute about whether the property was abandoned and because the property owner's inadequate responses to the proceedings were not inexcusable, we reverse.

The record reveals that in September 2018, Armani Realty Group, LLC purchased property on South 17th Street in Newark from the First Episcopal District of the African Methodist Episcopal Church. Armani did not pay 2018's fourth quarter property taxes, and FIG as CUST for FIG NJ18, LLC purchased a tax sale certificate on the property that was issued by the City on January 11, 2019. Armani did not receive notice of the lien's existence because of its failure to timely record the deed memorializing its purchase.

By way of background, the holder of a tax sale certificate – like FIG – has no right to foreclose sooner than two years from the certificate's acquisition unless the property is abandoned within the meaning of the Abandoned

Properties Rehabilitation Act,[1] in which case the foreclosure action may be commenced "any time" after the certificate's acquisition.  See N.J.S.A. 54:5-86(b).  FIG commenced this foreclosure action on April 30, 2019.

Because a City official did not or would not provide a certification declaring the property abandoned, FIG was required to seek a declaration from the court. In that instance, N.J.S.A. 54:5-86(b) requires the submission of the lienholder's evidence of abandonment that may be "accompanied by a report and sworn statement by an individual holding appropriate licensure or professional qualifications."

FIG moved in the trial court on June 25, 2019, seeking a determination that the property was abandoned. In support, FIG submitted a certification executed by Derek Leary, a licensed building inspector, who asserted the property had been abandoned and had not been legally occupied for at least the prior six months. FIG also provided six-year-old documents suggesting the City had then placed the property on its abandoned property list. Armani – through its non-lawyer principal – attempted to file opposition to FIG's motion, but the county clerk would not accept those papers because the matter was pending in the foreclosure unit. Armani's principal also wrote to FIG's counsel on July 10,

---

[1] N.J.S.A. 55:19-78 to -107.

A-3170-19

2019, advising of Armani's ownership of the property, providing an address and phone number, and claiming the property was not vacant and was "presently under renovation." FIG's counsel did not respond and did not inform the motion judge of Armani's communication.

On July 12, 2019, viewing it unopposed, the motion judge granted the abandonment motion, by way of a succinct written opinion that relied, for the most part, on Leary's certification. A few weeks later, Armani's principal attempted to file a motion to vacate the abandonment order. The motion was rejected by the clerk because Armani was not represented by counsel as required by Rule 1:21-1(c). Around the same time, Armani recorded the deed obtained in September 2018, and FIG thereafter amended its complaint to include Armani as the property owner.

On January 24, 2020, FIG moved for the substitution of Keystone Servicing Company, LLC as plaintiff[2] and for the entry of default judgment.[3] A few days later, Armani retained counsel who immediately wrote FIG's counsel

---

[2] FIG claims it assigned the lien to Keystone in August 2019 without revealing the consideration received for the assignment.

[3] The certification of service on which Keystone relies in support of its argument that Armani was served with the motion for default judgment states only that service was made on Armani of the motion to substitute Keystone as plaintiff.

setting forth Armani's position that, among other things, the property was not abandoned but instead undergoing renovations. Two weeks later, Armani's attorney wrote again to FIG's counsel with additional information about the renovation and again requested that the complaint be dismissed. A few days before counsel's second letter, FIG obtained an order substituting Keystone as plaintiff in this action, and the next day – February 11, 2020 – the trial court entered default judgment in Keystone's favor.

On March 11, 2020 – twenty-nine days later – Armani moved to vacate the default judgment. In asserting the existence of excusable neglect, Armani's certification delineated its efforts to both communicate with FIG and file opposition to the abandonment motion. To demonstrate a meritorious defense, Armani provided, among other things, information about the renovation. Armani also argued that Keystone had not provided any evidence to suggest FIG's assignment to Keystone was for more than nominal value as required by Simon v. Rando, 189 N.J. 339, 343-44 (2007). In opposition, Keystone merely recited the procedural history and outlined Armani's failure to timely record its deed or to timely respond to the motions that led to entry of the default judgment.

The chancery judge denied Armani's motion for reasons expressed in a written opinion, and Armani appeals, arguing in a single point that the judge

5

misapplied his discretion by failing to vacate a month-old default judgment in the face of its allegations of excusable neglect and a meritorious defense. We agree.

Missing from the chancery judge's decision is the well-established principle that a Rule 4:50 motion requires a judge's consideration of equitable principles and demands that a request to vacate a default judgment "be viewed with great liberality," with "every reasonable ground for indulgence . . . tolerated to the end that a just result is reached." Marder v. Realty Constr. Co., 84 N.J. Super. 313, 318-19 (App. Div.), aff'd, 43 N.J. 508 (1964); see also Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283-84 (1994); Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993). The chancery judge's written opinion reveals a departure from both the letter and spirit of these principles. Armani, which was unrepresented until two weeks before entry of the default judgment, made numerous attempts to file opposition to the abandonment motion and to less formally convince FIG's counsel that the property wasn't abandoned. Certainly, pro se status does not imbue a party with greater rights than represented litigants, but courts should exercise their discretion in light of that circumstance. See Midland Funding LLC v. Albern, 433 N.J. Super. 494, 500 (App. Div. 2013). While Armani's principal should

have understood the better course was to retain counsel at an earlier point in time, we do not view his brief delay until shortly before entry of default judgment to be of any serious consequence, particularly considering Keystone waited until the same approximate time to enter the litigation even though it alleges it was the real party in interest as far back as August 2019.

Moreover, Armani made a significant showing that the claim of abandonment was incorrect and, in fact, that FIG's submission on the abandonment motion was inadequate. As mentioned above, both FIG and the judge[4] relied on the Leary certification. Leary's certification consisted of a preprinted form – delineating the factors set forth in N.J.S.A. 55:19-81 as to what constitutes abandonment – on which Leary made or chose not to make certain markings in a way that generates doubt about the sufficiency of what he was attempting to convey.

Leary asserted that he "inspected the exterior of the [p]roperty on 2/2/19," the day before the certification was executed. He declared that the property "is abandoned pursuant to N.J.S.A. 55:19-81 because the [p]roperty has not been legally occupied for at least six (6) months preceding the date of this

---

[4] We note that one judge ruled on the abandonment motion, another entered the default judgment, and a third denied the motion to vacate.

certification." Leary did not explain how he knew the property had not been legally occupied for the prior six months, nor does the certification provide many other facts that would support this conclusion; the certification provides only scant information about what could be seen from the outside of the structure on a single day. For example, the preprinted form that Leary used to express his findings listed seven indicia of abandonment. Leary, however, drew a line through the first four and didn't check off the boxes of the other three. Beyond that, the form contained three other paragraphs in which the inspector would fill in the blanks to describe those conditions that: required rehabilitation or repair; made the property unfit for use or occupancy; and posed potential health and safety hazards. Leary left those spaces blank and drew a line through those three categories of conditions. After a signature and a date, the following was handwritten on the document unseparated or terminated by punctuation: "Vacant property secure no utilitys [sic] home exterior appears to be in good shape."[5]

On its face, the certification presents numerous questions and suggests many ambiguities. First, by striking the preprinted material, was Leary

---

[5] So the reader may better appreciate our description of the Leary certification, a copy is appended.

conveying the opposite of what is stated in that preprinted material was true? If

so, then the certification conveyed that:

- the property was <u>not</u> in need of rehabilitation

- rehabilitation <u>had taken place</u> during the last six months

- the property <u>was fit</u> for human habitation, occupancy or use

- there was <u>no</u> material increased risk of fire to the property and adjacent properties

- <u>no</u> conditions required rehabilitation or repair

- <u>no</u> conditions made the property unfit for human habitation, occupancy or use, and

- <u>no</u> conditions presented health and safety hazards

Second, by failing to check off other boxes, it would seem Leary was asserting

that:

- the property is <u>not</u> subject to unauthorized entry and that the owner has taken reasonable and necessary measures to secure the property

- there is <u>no</u> presence of vermin and <u>no</u> accumulation of debris, uncut vegetation, or physical deterioration, and

- the structure was <u>not</u> dilapidated and its condition did <u>not</u> materially affect the welfare of the residents in close proximity

So viewed, it would appear Leary provided information that would suggest – despite his bald general assertion of a six-month abandonment at the certification's outset – the property was not abandoned. Only Leary's assertion that the property was "vacant" and the utilities were turned off provided support for his claim of abandonment earlier than the only day he visited the property. In short, other than what Leary conveyed about what he could observe from outside the structure on February 2, 2019 – much of which countered his claim of abandonment[6] – Leary did not reveal how he had personal knowledge that the property met the statutory definition that it had not been "legally occupied for a period of six months." N.J.S.A. 55:19-81.

Much of the parties' arguments in this appeal focus on the abandonment issue. We, of course, draw no conclusions on this issue except to observe the presence of genuine factual disputes. To constitute a meritorious defense under Rule 4:50-1, a party need not demonstrate the defense is undisputed, only that it is "worthy of judicial determination." O'Connor v. Altus, 67 N.J. 106, 129 (1975). Armani satisfied this aspect of Rule 4:50-1(a) not only because of its own affirmative allegations about the property but also because of the

---

[6] Leary certified that the "property [was] secure" and the "home exterior appears to be in good shape."

inadequacies in the Leary certification. We are also satisfied the judge did not reasonably indulge Armani's brief delays or missteps in seeking to protect its interests. Armani's principal repeatedly – albeit ineffectually – tried to make Armani's position known to FIG, Keystone, and the trial court. His missteps, while regrettable, were not so egregious as to fail to waken the conscience of the chancery court. See, e.g., Bergen-Eastern Corp. v. Koss, 178 N.J. Super. 42, 45-46 (App. Div. 1981); see also BV001 Reo Blocker, LLC v. 53 W. Somerset St. Props., LLC, 467 N.J. Super. 117, 128-30 (App. Div. 2021); Olympic Indus. Park v. P.L., Inc., 208 N.J. Super. 577, 581-82 (App. Div. 1986).

In the final analysis, the chancery judge mistakenly failed to indulge or "view with great liberality" Armani's reasonable arguments about both its claim of excusable neglect and its meritorious defense.[7] The judge also gave no consideration to equitable principles, including here the overarching maxim that "equity abhors a forfeiture." See Dunkin Donuts of Am., Inc. v. Middletown Donut Corp., 100 N.J. 166, 182 (1985); Brunswick Bank & Trust v. Heln Mgmt. LLC, 453 N.J. Super. 324, 330-31 (App. Div. 2018); Sovereign Bank, FSB v. Kuelzow, 297 N.J. Super. 187, 198 (App. Div. 1997).

---

[7] For this reason, we need not opine on Armani's other alleged defenses, including its claim that Keystone may lack standing because it has not shown it received an interest in the property from FIG for more than nominal value.

The order denying the motion to vacate the default judgment is reversed and the matter remanded for entry of an order granting Armani leave to file a pleading responsive to the complaint and for all proceedings that may thereafter be necessary to fairly, efficiently, and justly resolve this tax sale foreclosure action.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

## ABANDONED PROPERTY CERTIFICATION

I, Derek Leary, of full age, hereby certifies as follows:

1.  I am a Licensed Construction Official, Building Subcode Official, Building Inspector HHS, Housing Code Official and Inspector of Hotel and Multiple Dwellings in the State of New Jersey.

2.  I am familiar with the facts contained herein concerning the Property located at

    713 S. 17st

    Newark                    (the "Property").

I Inspected the exterior of the Property on 2/2/19 . I took the attached pictures of the Property during the inspection.

3.  The Property is abandoned pursuant to N.J.S.A. 55:19-81 because the Property has not been legally occupied for at least six (6) months preceding the date of this Certification; and

    A.  ____ The Property is in need of rehabilitation and no rehabilitation has taken place during the last six months.

    B.  ____ At least one installment of property tax remains unpaid and delinquent on the Property.

    C.  ____ The Property has been found to be unfit for human habitation, occupancy or use.

    D.  ____ The condition and vacancy of the Property materially increases the risk of fire to the property and adjacent properties.

    E.  ____ The property is subject to unauthorized entry leading to potential health and safety hazards: the owner has failed to take reasonable and necessary measures to secure the property; or the municipality has secured the property in order to prevent such hazards after the owner has failed to do so.

    F.  ____ The presence of vermin or the accumulation of debris, uncut vegetation or physical deterioration of the structure or grounds have created potential health and safety hazards and the owner has failed to take reasonable and necessary measures to remove the hazards.

13

324

G. ___ The dilapidated appearance or other condition of the property materially affects the welfare, including the economic welfare, of the residents of the area in close proximity to the property, and the owner has failed to take reasonable and necessary measures to remedy the conditions.

4. Conditions that require rehabilitation/repair are:

5. Conditions that make the property unfit for human habitation, occupancy or use are:

6. Conditions that lead to potential health and safety hazards are:

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

Date: 2/3/19

VACANT Property SECURE no Utitity's Home Exterior Appears to Be In Good SHAPE.

14